UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARIUSZ TARNAWSKI, *et al.*,

                         *Plaintiffs*,

     – against –

ZEN RESTORATION INC., *et al.*,

                         *Defendants*.

**MEMORANDUM & ORDER**
20-cv-04802 (NCM) (LKE)

---

**NATASHA C. MERLE**, United States District Judge:

Plaintiffs bring this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and the New York Labor Law, N.Y. Lab. L. §§ 190, *et seq.* ("NYLL"). *See* Am. Compl. ("AC") ¶ 2, ECF No. 33. Before the Court is plaintiffs' motion seeking provisional relief including (1) a preliminary injunction against defendants Bernard and Halina Sobus; (2) appointment of a receiver over defendant Zen Restoration Inc.; and (3) prejudgment attachment of Bernard, Halina, and Zen Restoration's assets. *See generally* Pls.' Mot.[1] Also before the Court is defendants Bernard and Halina's motion

---

[1]     The Court hereinafter refers to plaintiffs' memorandum of law in support of their motion for a preliminary and permanent injunction, appointment of a receiver, and attachment of assets, ECF No. 99, as "Pls.' Mot."; defendants Bernard and Halina's opposition to plaintiffs' motion, ECF No. 107, as "Defs.' Opp'n"; plaintiffs' reply memorandum of law in support of their motion, ECF No. 110, as "Pls.' Reply"; defendants Bernard and Halina's motion to dismiss the complaint, ECF No. 78, as "Defs.' Mot."; plaintiffs' memorandum of law in opposition to defendants' motion, ECF No. 82, as "Pls.' Opp'n"; and defendants' opposition to plaintiffs' opposition, ECF No. 102, as "Defs.' Reply." Throughout this Order, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

to dismiss. *See generally* Defs.' Mot. For the reasons stated below, both motions are **DENIED**.

## BACKGROUND

### I.    Factual Background

Defendants Bernard and Halina Sobus are a married couple who, along with their two adult children, defendants Przemyslaw and Monika, manage and operate defendant Zen Restoration Inc., a general contractor "offer[ing] high end construction and renovation services to . . . clients in the New York City Area." AC ¶¶ 11–12, 21, 24. Zen Restoration is the parent company of several subsidiary companies, including defendants Zen European, Primo Plumbing, and Kaiser Decorating. AC ¶¶ 24–25. Zen Restoration offers services such as carpentry, plumbing, painting, and stone work through its subsidiaries. AC ¶ 24. All of these corporate entities operate out of the same industrial complex, which is owned by the individual defendants. AC ¶ 25. The corporate defendants "shared all managers, project supervisors" as well as "employees, tools and materials." AC ¶¶ 38–39.

Plaintiffs are of group of seven former employees of the corporate defendants, including carpenters, painters, construction workers, and a plumber. AC ¶ 58. At the beginning of their employment, each plaintiff entered into an oral agreement with Bernard, "as a representative of [d]efendants," whereby they agreed to work for defendants in exchange for an hourly wage. AC ¶ 59. Throughout the course of their employment, each plaintiff "with the exception of [Jerzy] Pelc, [Leszek] Tarnawski . . . , and [Cezary] Sawicki" worked in excess of forty hours per week during their regular workweek, but never received overtime pay. AC ¶ 62. For instance, plaintiff Marek Wodjat worked fifty hours per week as part of his regularly scheduled work-week between 2014

2

through 2019 without ever receiving overtime pay. AC ¶ 66. Similarly, between 2014 and 2017, plaintiff Mariusz Tarnawski regularly worked forty hours per week Monday through Friday, and would work an average of two Saturdays per month without receiving overtime pay. AC ¶ 63.

Beginning in 2016, plaintiffs started receiving late paychecks, sometimes more than a week after plaintiffs were supposed to be paid. AC ¶ 71. Even when plaintiffs received their paychecks on time, defendants would sometimes "give out the paychecks but . . . tell employees to wait with their encashment." AC ¶¶ 72–73. Often times plaintiffs would have to attempt to deposit their paychecks multiple times because the checks would be returned due to insufficient funds in the corporate defendants' bank accounts. AC ¶ 73. Due to the corporate defendants' financial difficulties, Bernard or payroll personnel would instruct plaintiffs to "immediately cash their paychecks" when the corporate defendants would receive funds. *See* AC ¶ 78. As a result, plaintiffs "would often camp out in front of [their] bank[s] on Saturdays to attempt to cash their paychecks." AC ¶ 80.

Plaintiffs were terminated in or about March 2020 purportedly because of a "drop-off in business activity" due to the COVID-19 virus. AC ¶ 98. Plaintiffs allege that this reason was "pretextual" and the "actual reason" they were fired was because of their "numerous complaints to [d]efendants about their failure to pay each [p]laintiff overtime wages and about issuing dud checks." AC ¶ 98. Eventually, plaintiffs' positions were filled with other workers. AC ¶ 101.

## II.    Procedural Background

Plaintiffs commenced this action on October 6, 2020, bringing claims for unpaid wages, unpaid overtime, and retaliatory termination in violation of both the FLSA and the NYLL. *See* Compl. ¶¶ 104–14, 129–38, ECF No. 1. Plaintiffs also brought claims for wage

notice violations, wage statement violations, and late payment of wages pursuant to the NYLL. Compl. ¶¶ 115–28. Plaintiffs later filed an amended complaint raising the same claims for relief and attaching several exhibits. *See* AC ¶¶ 103–37; AC Exs. ¶¶ 1–8. Defendants filed an answer to the amended complaint shortly thereafter. *See* Answer to AC, ECF No. 35.

This case was assigned to the undersigned on February 9, 2024. Following extensive discovery, defense counsel moved to withdraw as counsel for the corporate defendants as well as defendants Bernard and Halina. *See* Notice of Mot., ECF No. 67. Magistrate Judge Lara K. Eshkenazi granted defense counsel's motion, and later set a deadline of September 13, 2025 for the corporate defendants to obtain new counsel.[2] *See* ECF Order dated April 29, 2025; *see also* ECF Order dated August 14, 2025. Judge Eshkenazi also set a deadline for plaintiffs to move to amend their complaint and to commence default proceedings. *See* ECF Order dated June 11, 2025.

Approximately two months later, plaintiffs requested entry of default against the corporate defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure due to the corporate defendants' failure to obtain new representation. Req. for Certificate of Entry of Default, ECF No. 73. On July 24, 2025, the Clerk of Court entered default against the corporate defendants. ECF No. 75. Soon after, plaintiffs requested an extension of time to move for a default judgment because, among other things, they would no longer seek to amend the complaint "to bring new parties into the matter and, instead, [would] file a motion for default judgment against the defaulted corporate defendants and for injunctive relief against [d]efendants Bernard Sobus and Halina Sobus." Letter dated July

---

[2]    As of the date of this Order, the corporate defendants have not obtained new counsel.

28, 2025 ("Pls.' Letter") at 2, ECF No. 76. Plaintiffs stated that they "need[ed] more time to obtain evidence from Poland and here in New York" prior to filing their motion. Pls.' Letter 2. Judge Eshkenazi granted plaintiffs' request and directed plaintiffs to file their motion for default judgment and injunctive relief by August 21, 2025. ECF Order dated July 29, 2025.

Shortly thereafter, defendants Bernard and Halina—proceeding pro se—moved to dismiss plaintiffs' complaint, arguing that it alleged insufficiently specific facts to sustain plaintiffs' claims. *See* Defs.' Mot. 2. During the pendency of defendants' motion, plaintiffs filed their motion for a default judgment,[3] as well as their motion for a preliminary injunction. *See* Mot. for Default J., ECF No. 86; Pls.' Mot. In addition to seeking a preliminary injunction, plaintiffs also seek appointment of a receiver over Zen Restoration, and attachment of Bernard, Halina, and Zen Restoration's assets. Pls.' Mot 23. On October 17, 2025, plaintiffs filed a subsequent motion "seek[ing] essentially the same relief" as their prior motion. Tr. of Hr'g dated Oct. 28, 2025 ("Oct. 28 Tr.") 3:16–19 (draft on file with Court). Soon after, the Court held a hearing on plaintiffs' motions for provisional relief and defendants' motion to dismiss at which both parties appeared. *See* ECF Minute Entry dated October 28, 2025.

---

[3]     Plaintiffs' motion for default judgment seeks default against all defendants, *see* Mem. of Law in Supp. of Pls.' Mot. for Default J. 6, ECF No. 93, however, as discussed above, the Clerk of Court has entered default pursuant to Federal Rule of Civil Procedure 55(a) only against defendants Kaiser Decorating Inc., Primo Plumbing & HVAC Corp., Zen European Restoration Corp., and Zen Restoration Inc, *see* ECF No. 75.

**LEGAL STANDARD**

## I.    Provisional Relief

### A.  Preliminary Injunction

 "A preliminary injunction is an extraordinary remedy never awarded as of right," and is only warranted upon a clear showing by a plaintiff that they are entitled to relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008).[4] In order to establish that such a remedy is warranted, the movant must show "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Connecticut State Police Union v. Rovella*, 36 F.4th 54, 62 (2d Cir. 2022), *cert. denied*, 143 S. Ct. 215 (2022).

 A plaintiff seeks a mandatory injunction when he seeks to "alter, rather than maintain, the status quo." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (citing *Tom Doherty Assoc., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995)). Courts apply a "heightened standard" to requests for mandatory injunctions under which plaintiffs must "show a clear or substantial likelihood of success on the merits, and make a strong showing of irreparable harm." *JTH Tax, LLC v. Agnant*, 62 F.4th 658, 667, 669 (2d Cir. 2023).

### B.  Receivership

 Federal courts may appoint a receiver to protect a party's interest in property. *See* Fed. R. Civ. P. 66; *see also Wilson v. Pasquale's DaMarino's, Inc.*, No. 10-cv-02709, 2019

---

[4]     Throughout this Order, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

WL 4601969, at *5–6 (S.D.N.Y. Sept. 23, 2019). District courts have "significant discretion" when deciding whether to appoint a receiver. *BMO Harris Bank, N.A. v. Principis Cap. LLC*, No. 20-cv-06355, 2020 WL 8817588, at *2 (S.D.N.Y. Oct. 8, 2020). Still, "[t]he appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect [a] plaintiff's interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997); *see also Fed. Nat'l Mortg. Ass'n v. 204 Ellery St., LLC*, No. 23-cv-05343, 2024 WL 3716031, at *2 (E.D.N.Y. Aug. 8, 2024) ("[C]ourts throughout this circuit recognize that the appointment of a receiver is a drastic remedy that should be imposed only where no lesser relief will be effective.").

### C. Prejudgment Attachment

"An attachment bars any sale, assignment or transfer of, or any interference with the property attached." *Iraq Telecom Ltd. v. IBL Bank S.A.L.*, 43 F.4th 263, 269 (2d Cir. 2022). Pursuant to Rule 64 of the Federal Rules of Civil Procedure, parties may "seek an order of attachment in the manner provided by the law of the state in which the district court sits." *IME Watchdog, Inc. v. Gelardi*, No. 22-cv-01032, 2024 WL 866136, at *3 (E.D.N.Y. Feb. 29, 2024). Under New York law, a party seeking an order of attachment must establish four things: (1) a claim for a money judgment; (2) probability of success on the merits; (3) one or more of the enumerated statutory grounds for attachment under N.Y. C.P.L.R. § 6201; and (4) the amount demanded exceeds any offset for counterclaims. N.Y. C.P.L.R. § 6212; *Hawkins v. Zoegall*, No. 23-cv-04040, 2023 WL 4106645, at *2 (E.D.N.Y. June 20, 2023). In addition, "[t]he Second Circuit has noted that the movant must also demonstrate that there is need for the attachment." *Loeser v. Gabae Dev. ULC*, No. 12-cv-00187, 2013 WL 4056209, at *2 (S.D.N.Y. Aug. 12, 2013).

## II.    Rule 12(c)[5]

The legal standard governing a Rule 12(c) motion is identical to the legal standard governing a Rule 12(b)(6) motion. *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014). Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y.*, Inc., 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "[t]he issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

In order to survive a motion to dismiss, a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the

---

[5]    Because defendants filed an answer to the amended complaint, the Court construes the individual defendants' motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See U.S. ex rel. Krol v. Arch Ins. Co.*, 46 F. Supp. 3d 347, 349 (S.D.N.Y. 2014) ("Although [the defendant's] motion is styled as a motion to dismiss under Rule 12(b)(6), a defendant may not make a motion under Rule 12(b) after it has filed its responsive pleading. A post-answer motion arguing that a complaint fails to state a claim must be brought, instead, as a motion for judgment on the pleadings under Rule 12(c). Accordingly, the Court deems [the defendant's] motion to be brought pursuant to Rule 12(c).").

Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### I.    Preliminary Injunction

Plaintiffs request the Court enjoin defendants Bernard and Halina from transferring their assets and the assets of Zen Restoration in a manner that would frustrate a future judgment against them. Pls.' Mot. 23. In assessing a request for a preliminary injunction, the Court "begin[s] with the single most important prerequisite": irreparable harm. *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 358 (2d Cir. 2024). The purpose of preliminary relief is to prevent "actual and imminent" injury that cannot be undone if the moving party prevails on the merits. *See JTH Tax*, 62 F.4th at 672. In assessing whether a party will suffer irreparable harm, the Court must consider whether "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Courts must determine whether irreparable harm will flow based on the specific facts of the case. *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) ("[C]ourts may no longer simply presume irreparable harm[.]").

Furthermore, "a request for an injunction will be denied when remedies available at law, such as monetary damages, are adequate to compensate for the injury." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 504 (2d Cir. 2014). The movant must therefore show that the harm is such that he cannot be made whole through monetary damages. *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002). Indeed, "[t]he

Second Circuit has consistently stressed that . . . [a] monetary loss will not suffice" as irreparable harm "unless the movant provides evidence of damage that cannot be rectified by financial compensation." *Gen. Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1075 (S.D.N.Y. 1994). Moreover, a party's present desire to preserve eventual recovery of monetary damages is insufficient on its own to warrant preliminary relief. *See Firemen's Ins. Co. of Newark, N.J. v. Keating*, 753 F. Supp. 1146, 1157 (S.D.N.Y. 1990) ("The fact that plaintiff may, in the interim, be marginally less secure with respect to the availability of a final money judgment, does not constitute irreparable harm so as to merit the extraordinary remedy of a preliminary injunction.").

Still, in certain circumstances, monetary harm may constitute irrreparable harm, including when a defendant takes steps to become "judgment-proof[.]" *Pennantia, LLC v. Rose Cay Maritime, LLC*, No. 25-cv-05904, 2025 WL 2388807, at *3 (S.D.N.Y. Aug. 18, 2025). A defendant may be considered judgment-proof because they "imminently will be insolvent" or because they have "demonstrated an intent to frustrate any eventual judgment against [them]." *Id.* at *3; *see also Shaoxing Bon Textiles Co., Ltd. v. 4-U Performance Grp. LLC*, No. 16-cv-06805, 2017 WL 737315, at *3 (S.D.N.Y. Feb. 6, 2017) ("Since monetary injury generally does not constitute irreparable harm, a plaintiff seeking damages must prove either that the defendant took steps to frustrate a future judgment or that the defendant is or imminently will be insolvent[.]"). However, the mere possiblity that a plaintiff may not be able to collect on a judgment does not suffice; rather, a plaintiff must "allege facts (not conclusions) and provide evidence that the targeted defendants intend to frustrate judgment in the case at bar." *Kebapci v. Tune Core Inc.*, No. 15-cv-07141, 2016 WL 6804919, at *3 (E.D.N.Y. Nov. 16, 2016); *see also In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir. 1985) ("[F]ederal courts have found preliminary

injunctions appropriate where it has been shown that the defendant intended to frustrate any judgment on the merits by transferring its assets out of the jurisdiction.").

Plaintiffs seek an order enjoining Bernard and Halina from "[t]ransferring, wasting, disposing, encumbering, diminishing, or otherwise dissipating" their assets, as well as the assets of Zen Restoration. *See* Pls.' Mot. Ex. 1 ("Proposed Order") 5, ECF No. 95-1. Plaintiffs argue that they will suffer irreparable harm in the absence of a preliminary injunction because defendants "are likely to render a judgment uncollectible." Pls.' Mot. 12. Specifically, plaintiffs argue that Bernard has engaged in "active efforts to make himself and his entities judgment-proof." Pls.' Mot. 12. Plaintiffs point to evidence which, in their view, evince a "systematic pattern of asset concealment and manipulation," all of which are part of a "long-running scheme that [p]laintiffs have now uncovered at its critical final stages[.]" Pls.' Reply 3.

Plaintiffs argue that at least seven events support the existence of this scheme. Pls.' Reply 3; *see also* ECF No. 116. First, Bernard's "unexplained" replacecment of several existing mortgages on certain real property with a "new replacement mortgage" in the amount of ten million dollars—and from which Bernard "allegedly withdrew $3.5 million in equity." Pls.' Mot. 13; Decl. of Robert Wisniewski dated Aug. 21, 2025 ("Wisniewski Decl. I") ¶ 9, ECF No. 95. Second, Bernard's failure to disclose Creative Tiger Inc., an entity which plaintiffs "recently discovered" that Bernard "presum[ably] own[s][.]" Pls.' Mot. 9. Plaintiffs also highlight "suspicious asset purchases" made by Creative Tiger. Pls.' Mot. 13, 18. Third, Halina's "direct involvement" in the "fraudulent activities" of Anecia Sp. z o.o.—a company which Halina chairs—specifically the company's false financial statements and its failure to file financial reports since 2022. Pls.' Reply 4. Fourth, Zen Restoration's bankruptcy proceedings which, according to plaintiffs, were a "deliberate

tactic to circumvent the statute of limitations and transfer additional looted funds beyond their reach[.]" Pls.' Reply 4. Fifth, plaintiffs argue that Bernard has engaged in "deceptive travel patterns" by claiming that he has been flying to Poland to visit his mother, when in fact he has been flying to the Netherlands to establish an oil business. Pls.' Reply 4–5. Sixth, Zen Restoration is "facing imminent eviction from its operational base[.]" Decl. of Robert Wisniewski dated Oct. 17, 2025 ("Wisniewski Decl. II") ¶ 23, ECF No. 115. Finally, Bernard and Halina have "deliberate[ly] refus[ed] to comply with court-ordered discovery," specifically by failing to appear for court-ordered depositions. Wisniewski Decl. II ¶¶ 22.

Defendants, for their part, dispute plaintiffs' characterization of the facts, arguing that the Motion is "full of unverified allegations and simple untruths." Defs.' Opp'n 2. Defendants contend that plaintiffs' belief that the various business transactions were "all part of an anticipatory scheme to assure that the company would not have necessary funds" to pay their workers and creditors is more simply explained by a different reason: defendants used profits from their business to invest in other "limited opportunities," some of which were succesful, others not. Defs.' Opp'n 3. Defendants argue that plaintiffs "provide[] no specific information" to support their assertions that they will suffer irreparable harm. Defs.' Opp'n 5. Specifically, defendants argue that plaintiffs' "fabricated" allegations concerning the alleged scheme to siphon funds all pertain to events that happened in the past. *See* Defs.' Opp'n 5. Defendants argue that the lack of allegations as to present activity is important because plaintiffs' cited authority "deal[s] with cases where there is proven, identifiable ongoing transfer of assets to defraud plaintiffs[.]" Defs.' Opp'n 5–6. Here, however, plaintiffs "provide no credible claims of the likelihood of such activities in the present." Pls.' Opp'n 5.

It's axiomatic that irreparable harm "must be shown to be actual and imminent, not remote or speculative," to warrant preliminary injunctive relief. *Kamerling*, 295 F.3d at 214; *see also CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 782 (2d Cir. 2010) (summary order) ("In order to show a likelihood of irreparable harm, the plaintiff must provide some substantiation for its claims—the harm must be *imminent* before a court may issue injunctive relief.") (emphasis in original). Thus, allegations that a defendant will dissapate assets to become judgment-proof must be supported by a "showing of intent to frustrate any judgment on the merits." *Spin Master v. Aciper*, No. 19-cv-06949, 2020 WL 6482878, at *4 (S.D.N.Y. Nov. 4, 2020); *see also Arrey v. Gov't of the Rep. of Cameroon*, No. 89-cv-02936, 1991 WL 84660, at *2 (S.D.N.Y. May 13, 1991) ("In order to grant injunctive relief to [e]nsure judgment satisfaction, the requested relief must coincide with strong evidence indicating the possibility of asset depletion.").

Plaintiffs fail to make the necessary strong showing that defendants Bernard and Halina are likely to frustrate a judgment on the merits by dissapating assets. For one, although plaintiffs argue that Bernard's "recent activities" demonstrate an "ongoing intent" to evade creditors, the transactions plaintiffs cite do not clearly establish conduct that is recent or ongoing. For example, Bernard's "mortgage scheme" began, according to plaintiffs, on October 9, 2018, two years before this litigation commenced. *See* Wisniewski Decl. I ¶ 9. Similarly, although plaintiffs may have only recently discovered Bernard's ownership of Creative Tiger, the "suspicious asset purchases" which plaintiffs complain of, Pls.' Mot. 13, 18, transpired more than a decade ago, *see* Decl. of Rafal Piwowarski ("Piwowarski Decl.") ¶¶ 5–7, ECF No. 96 ("[O]n August 8, 2013, Anencia sold its . . . shares to a company Creative Tiger, Inc."). Indeed, the most "recent" business transaction which plaintiffs argue supports a finding of ongoing intent to dissipate assets appears to be Zen

Restoration's withdrawal of its bankruptcy petition on November 26, 2024. *See* Wisniewski Decl. I ¶ 8.[6] Accordingly, plaintiffs fail to supply sufficient evidence supporting an inference that removal of Bernard and Halina's assets from the Court's jurisdiction is imminent such that plaintiffs will be unable to collect on a money judgment. *See Loc. 1303-362 of Council 4 v. KGI Bridgeport Co.*, No. 12-cv-01785, 2014 WL 555355, at *3 (D. Conn. Feb. 10, 2014).

Moreover, plaintiffs fail to provide strong evidence demonstrating that defendant "has the intention of transferring [their] assets to prevent the satisfaction of judgment." *Arrey*, 1991 WL 84660, at *2; *see also Loc. 1303-362*, 2014 WL 555355, at *3 ("[P]laintiffs do not point to any evidence tending to show that [the defendant] is planning on removing its assets in an effort to frustrate any decision by the Second Circuit in favor of the plaintiffs."). Put differently, plaintiffs fail to make a strong showing that defendants' business transactions were made with the purpose of evading a potential judgment in this case as opposed to, as defendants suggest, "invest[ing] in some limited opportunities in Europe, some . . . succeful, others, for various reasons . . . not." Defs.' Opp'n 3. This is especially true given that many of the transactions highlighted by plaintiffs occurred prior to the commencement of this litigation. And plaintiffs have presented no evidence that defendants' withdrawal of the bankruptcy action was intended to (or would) move assets outside of this Court's jurisdiction.

---

[6]    To the extent plaintiffs argue that preliminary relief is warranted because Zen Restoration is at risk of insolvency as reflected by its bankruptcy filings, *see* Pls.' Mot. 5, 10, 20, this argument fails to demonstrate actual and imminent harm because (1) the bankruptcy petition—which was later withdrawn—was filed more than three years ago, Wisniewski Decl. I ¶ 4; and (2) "the mere fact of filing for bankruptcy [is] insufficient to establish irreparable harm absent evidence that a plaintiff would actually be unable to collect on a judgment against a defendant." *Westchester Fire Ins. Co. v. DeNovo Constructors, Inc.*, 177 F. Supp. 3d 810, 814 (S.D.N.Y. 2016).

Although plaintiffs assert in conclusory fashion that defendants are engaged in a "long-running scheme" of "asset concealment and manipulation" at its "critical final stages," Pls.' Reply 3, they fail to connect the commencement of this "scheme" with the litigation, as well as fail to provide strong evidence indicating how they know that the scheme is near its end. *See Arrey*, 1991 WL 84660, at *2 ("[U]nsubstantiated allegations will not suffice. In order to grant injunctive relief to insure judgment satisfaction, the requested relief must coincide with strong evidence indicating the possibility of asset depletion."); *see also Kebapci*, 2016 WL 6804919, at *3 ("[A] plaintiff must still allege facts (not conclusions) . . . blanket contention[s] that defendants are transferring their assets and trying to avoid satisfying any judgment do[] not suffice.").

Indeed, plaintiffs' evidentiary submissions indicate that their speculation as to defendants' alleged scheme arises, in large part, from the suggestions of plaintiffs' counsel. *See* Decl. of Miroslaw Tarnacki ("Tarnacki Decl.") ¶ 6, ECF No. 98 ("[A]fter recently meeting with my attorney Robert Wisniewski . . . I understood that this current lack of payment . . . [is] part of a larger pattern of mismanagment of funds by Bernard Sobus in an effort to bankrupt Zen Restoration."); *see also* Decl. of Mariusz Tarnawski ("Tarnawski Decl.") ¶ 2, ECF No. 97 ("I was informed by my attorney over the years about Bernard Sobus's sabotaging this lawsuit and putting Zen Restoration in bankruptcy."). And in any event, even assuming that defendants mismanaged funds, plaintiffs fail to "provide evidence that . . . defendants intend to frustrate judgment in the *case at bar*." *Kebapci*, 2016 WL 6804919, at *3 (emphasis added); *accord Arrey*, 1991 WL 84660, at *2 (denying preliminary injunction to freeze assets where the plaintiff "provided no evidence connecting the funds with the instant cause of action").

Plaintiffs' cited cases illustrate the insufficiency of their evidentiary showing here. For example, in *Motorola, Inc. v. Abeckaser*, No. 07-cv-03963, 2009 WL 1362833 (E.D.N.Y. May 14, 2009), the plaintiffs supplied "clear and convincing evidence that [the] defendant . . . ha[d] transferred the ownership of his home, a substantial asset, to another party, in violation of a stipulation entered into between the parties" during the course of litigation, as well as evidence that the defendant was "attempting to transfer other assets, including assets owned by the corporate defendants under his control, and . . . that [the] defendant . . . may soon leave the country." *Id.* at *3. Specifically, the plaintiff supplied a city register report reflecting a transfer of deed for the home dated during the pendency of the litigation. *Id.* at *2. Counsel for the plaintiff also submitted a declaration indicating that he spoke with an assistant district attorney regarding the status of a criminal case involving the defendant, and that the attorney relayed "that he understood that [the] defendant] was going to permanently leave the country and transfer the ownership and operation of his businesses." *Id.*

Similarly, in *Gelfand v. Stone*, 727 F. Supp. 98 (S.D.N.Y. 1989), the plaintiff made a sufficient showing of the defendant's "on-going efforts to place his assets outside the reach of his creditors," buttressed by the fact the defendant was then-presently "involved in a number of law suits in which his veracity ha[d] been called into question." *Id.* at 100–01; *see also id.* (relying on the defendant's previous guilty pleas to eight counts of "knowingly making false, fictitious, or fraudulent statements or representations to the government and to a count of conspiracy to commit an offense or to defraud the government"). The court also placed importance on evidence that "most of [the] defendant's assets, including his house and eighty percent of one of the companies he control[led], [we]re held by family members and not by [the defendant] directly." *Id.* And

16

in *In re Fait & Drexler, Inc.*, the Second Circuit found no abuse of discretion in the district court's conclusion that a preliminary injunction was necessary to ensure an eventual money judgment was effective based on the defendant's "numerous and substantial efforts to hide and secrete assets" during the litigation, 760 F.2d at 416, as well as the defendant's "blatant disregard for court orders," *id.* at 411. Included in the record before the district court were tax returns and monthly statements "showing considerable losses" from companies which the defendant was an officer and shareholder, evidence that the defendant received more than $600,000 in payments from the companies despite her testimony that her "only involvement with those companies was as a part-time employee supervising the clerical help," and outstanding judgments for hundreds of thousands of dollars against those companies. *See id.* at 410–11.

To the extent plaintiffs argue that the individual defendants have engaged in "slow and underhanded maneuvers" as part of a years-long scheme to "run[] the company Zen Restoration to the ground," Oct. 28 Tr. 10:1–8, this assertion too lacks the necessary evidentiary support to warrant a preliminary injunction. Plaintiffs argue that Bernard and Halina have taken certain steps that "clearly indicate[]" the existence of this scheme. Oct. 28 Tr. 10:7–8. This includes Bernard opening up an oil business in the Netherlands and defendants' alleged failure to pay their employees beginning in 2016. Oct. 28 Tr. 10:4–7, 12:20–24. However, some of the same evidence plaintiffs cite to in support of the existence of this scheme undermines their contention that Bernard and Halina are dissipating assets in an attempt to avoid creditors. For example, plaintiffs emphasize Bernard's October 2023 deposition testimony in state execution proceedings during which he testified that he recently set up an oil business. Wisniewski Decl. II ¶ 5; *see also* Pls.' Mot. 7. But during that same deposition Bernard also testified that he had not

transferred any real estate, cash, or personal property to anyone in the preceding four years, as well as that no one was holding personal or real property for his benefit in their name. *See* Wisniewski Decl. I Ex. 3 at 56:17–57:4, ECF No. 95-3.[7] Moreover, although plaintiffs insist that defendants' failure to pay their employees was part of a scheme to avoid paying creditors, plaintiffs proffer a different reason: "[t]he COVID[-19] [p]andemic was disastrous for [defendants'] business[.]" Defs.' Opp'n 2. Thus, plaintiffs have offered, at most, conflicting evidence as to whether defendants have engaged in a scheme to become judgment-proof, and injunctive relief is not warranted. *Accord Man Wei Shiu v. New Peking Taste, Inc.*, No. 11-cv-01175, 2013 WL 2351370, at *18 (E.D.N.Y. May 28, 2013) ("The Court declines to infer fraudulent intent here, as defendants have proffered an arguably legitimate reason for transferring the business, i.e., the owner's poor health.").

In sum, "[a]t best, . . . plaintiffs have demonstrated that there exists *some* chance that they may not be able to collect on judgment in their favor, falling far short of establishing irreparable harm." *Loc. 1303-362*, 2014 WL 555355, at *3 (emphasis in original); *see also LG Cap. Funding, LLC v. Vape Holdings, Inc.*, No. 16-cv-02217, 2016 WL 3129185, at *4 (E.D.N.Y. June 2, 2016) ("[The plaintiff] has at most, shown that there

---

[7]    The evidence that Bernard has recently opened an oil business, and, thus, presumably has assets which could be used to satisfy a money judgment against him, also weighs against a finding of irreparable harm. Indeed, in the amended complaint plaintiffs request that the Court "pierce the corporate veil" and allege that "for the purpose of the claims made by [p]laintiffs . . . the [c]orporate [d]efendants have no separate legal existence from the [i]ndividual [d]efendants." AC ¶ 57. And during oral argument plaintiffs argued that the Court has jurisdiction over Bernard's "moveable assets," including his purported ownership in the oil business and "two or three companies in Poland[.]" Oct. 28 Tr. 17:3–14. Thus, contrary to plaintiffs' assertion, the discovery of the "recent" opening of the oil business suggests that a judgment will not be rendered ineffectual in the absence of injunctive relief.

is a possibility that the company may be insolvent by the time this case is fully litigated; that mere possibility is speculative and cannot satisfy [the plaintiff]'s burden to show that it is likely to suffer irreparable harm."). Therefore, because plaintiffs fail to provide substantial evidence that defendants intend to frustrate judgment in the case at bar, they fail to demonstrate actual and imminent harm and the extraordinary remedy of a preliminary injunction is not warranted. Accordingly, plaintiffs' motion for a preliminary injunction is denied without prejudice. *See Signal Cap. Corp. v. Frank*, 895 F. Supp. 62, 65 (S.D.N.Y. 1995).[8]

## II.    Receivership

Plaintiffs also move for appointment of a receiver over defendant Zen Restoration Inc. pursuant to Rule 66 of the Federal Rules of Civil Procedure. Pls.' Mot. 18. Courts look to various factors when deciding a motion to appoint a receiver, including: "(1) [f]raudulent conduct on the part of defendant; (2) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to plaintiff by denial of the appointment would be greater than injury to the parties opposing appointment; [and] (5) . . . plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property." *BMO*, 2020 WL 8817588, at *2. None of the foregoing factors

---

[8]    Given this conclusion, the Court does not address the other factors of the preliminary injunction analysis. *See Gairy v. City of New York*, No. 23-cv-00802, 2024 WL 1468335, at *2 (E.D.N.Y. Apr. 4, 2024) ("[T]he court need not address the other elements for preliminary injunction because [the plaintiff] has failed to demonstrate that he would suffer irreparable harm in the absence of injunctive relief."); *see also Saba Cap. Master Fund, Ltd. v. BlackRock ESG Cap. Allocation Term Tr.*, No. 24-cv-01701, 2024 WL 3162935, at *6 (S.D.N.Y. June 25, 2024) ("Because irreparable harm is the most important prerequisite for a preliminary injunction, and because the [c]ourt finds that [the movant] has not met its burden of showing irreparable harm, it need not address any of the other factors to deny the motion.").

is dispositive. *SEC v. Xia*, No. 21-cv-05350, 2024 WL 3447849, at *12 (E.D.N.Y. July 9, 2024). Instead, "[t]he dispositive issue is whether the appointment of a receiver is clearly necessary to protect plaintiff[s'] interests in the property." *U.S. Bank N.A. v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d 247, 254 (S.D.N.Y. 2012).

The Court concludes that appointment of a receiver is not "clearly necessary to protect plaintiff[s'] interest" here. *BMO*, 2020 WL 8817588, at *3. At the outset, "this case does not implicate the purpose of a receiver because the dispute is not about ownership or control over property." *Zyppah, Inc. v. Ace Funding Source, LLC*, No. 19-cv-01158, 2019 WL 6647912, at *2 (S.D.N.Y. Nov. 6, 2019); *see also Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 366 (S.D.N.Y. 2000) ("The purpose of a receivership is to protect a party's interest in property pending resolution of a dispute over ownership or control between it and another party with a claim to the property."). Receiverships are traditionally used "to protect the value of an asset that is the subject of the litigation," for example, to protect the value of real property in foreclosure actions. *Zyppah*, 2019 WL 6647912, at *2 (quoting *United States v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987)). Here, although plaintiffs frame their property interest as in Zen Restoration, they "principally seek a receiver for the purposes of ensuring that . . . [d]efendants are capable of paying damages should judgment be entered against them." *Id*. Denial of plaintiffs' motion is appropriate on this basis alone. *See id.*; *see also Sanchez v. El Barrio's Car Serv., Inc.*, 347 F.R.D. 439, 445 (S.D.N.Y. 2024) (explaining that the court denied "[p]laintiff's motion for the appointment of a receiver ostensibly to run the ongoing businesses of the corporate judgment-debtors, including, among other things, paying employees, complying with wage and hour laws and paying taxes").

Moreover, several other factors weigh against appointing a receiver here. For instance, plaintiffs have not shown—at this time—a threat of "imminent danger" to their interests. *BMO*, 2020 WL 8817588, at *3. Conclusory labels aside, plaintiffs' suggestion that some of Zen Restoration's employees have recently resigned because they have not been paid, Tarnacki Decl. ¶ 6, fails to establish that Zen Restoration is on the "brink of insolvency," *Five Star Bank v. Mott*, No. 24-cv-06153, 2024 WL 5399075, at *7 (W.D.N.Y. Apr. 4, 2024); *see also Bank of Am. N.A. v. City View Blinds of N.Y. Inc.*, No. 20-cv-09911, 2025 WL 1625567, at *2 (S.D.N.Y. May 22, 2025) (denying motion to appoint receiver where the plaintiff had not—"at least at th[at] time—persuaded the [c]ourt of the risk of fraud or insolvency if a receiver [wa]s not appointed"); *cf. U.S. Bank*, 866 F. Supp. 2d at 254 (concluding that "[t]he near certainty of inexorable and substantial diminution in the [assets'] value ha[d] been established," where the plaintiff showed that all of the hotels under the defendants' management had "been issued default notices by the franchisor" and were "substantially in arrears of their obligations to the plaintiff"). Nor have plaintiffs demonstrated that a less drastic remedy than appointment of a receiver cannot protect their interests. *See, e.g.*, *Bank of Am.*, 2025 WL 1625567, at *1 (reasoning that the plaintiff had not "shown that there [was] a special reason to appoint a receiver," as opposed to "alternative remedies" even where the defendants had failed to satisfy a nearly two-year-old judgment); *accord Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988) ("[T]he appointment of a receiver is considered to be an extraordinary remedy . . . [that] should be employed cautiously and granted only when clearly necessary[.]").

Accordingly, because plaintiffs have failed to make an adequate showing that a receiver is clearly necessary to protect their interests, their motion to appoint a receiver is denied without prejudice. *See On-Time Disposal, Inc. v. North Jersey Recycling, LLC*,

No. 12-cv-06300, 2015 WL 5544434, at *4 (S.D.N.Y. Sept. 17, 2015) ("Plaintiff's application seeking the appointment of a receiver is denied without prejudice to renew upon the appropriate showing of clear necessity."); *see also BMO*, 2020 WL 8817588, at *3 (concluding that "even if [the plaintiff] ha[d] shown probable success in the action," factors did not warrant the extraordinary remedy of appointing a receiver, but denying motion "without prejudice to renewal if circumstances should warrant it").

### III. Prejudgment Attachment

Plaintiffs' request for prejudgment attachment fails for largely the same reasons. Similar to a receivership, attachment "is an extraordinary remedy." *Plaintiff Funding Holding, Inc. v. Carrera*, No. 17-cv-00257, 2017 WL 7411183, at *5 (E.D.N.Y. Feb. 6, 2017). Accordingly, "New York attachment statutes are construed strictly against those who seek to invoke the remedy." *Bernard v. Lombo*, No. 16-cv-00863, 2016 WL 7377240, at *3 (S.D.N.Y. Nov. 23, 2016); *see also Keawsri v. Ramen-Ya Inc.*, No. 17-cv-02406, 2020 WL 4505571, at *6 (S.D.N.Y. Aug. 5, 2020) ("Rule 64 of the Federal Rules of Civil Procedure provides that the remedy of attachment is governed by state law."). As such, "a plaintiff bears a high burden in proving [their] right to attachment of a defendant's assets." *Loeser*, 2013 WL 4056209, at *2. Moreover, because of the discretion afforded to courts in deciding whether to grant requests for attachment, "it would still be possible to deny the harsh remedy of attachment," even if a plaintiff meets the statutory requirements under New York law. *Wilson*, 2019 WL 4601969, at *7; *see also Man Wei Shiu*, 2013 WL 2351370, at *16 (citing *Cap. Ventures Int'l v. Rep. of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006)) ("Because attachment is a harsh remedy, the[] statutory factors are strictly construed in favor of those against whom attachment is sought, and attachment may be denied even where all four prerequisites have been met.").

A party seeking an order of attachment under New York law must meet one of the statutory requirements set forth in N.Y. C.P.L.R. § 6201. *Hawkins*, 2023 WL 4106645, at *2. Plaintiffs invoke N.Y. C.P.L.R. § 6201(3), which states that attachment may be granted where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]" N.Y. C.P.L.R. § 6201(3); *see* Pls.' Mot. 20.

Plaintiffs argue that Bernard's "intent and ability to move assets beyond the reach of creditors" can be inferred based on Bernard's "recent actions" including "setting up an oil business in the Netherlands," "owning entities in Poland," and "[h]is deceptive travel to the Netherlands under the guise of visiting his ailing mother in Poland." Pls.' Mot. 21. Plaintiffs further argue that the concealment of Creative Tiger and its "purported purchase" of foreign assets "strongly suggest a sham transaction designed to hide assets from creditors." Pls.' Mot. 22.

Certain of plaintiffs' evidence serves as indicia of fraud. For example, evidence suggesting that the registered address for one of Creative Tiger's offices in official Polish documents was in fact the "back entrance to . . . Zen Restoration," and that the listed president of Creative Tiger, Stanislaw Stopyra, was in fact a "construction laborer's helper" who worked at Zen Restoration. Tarnacki Decl. ¶¶ 8–10. Still, as set forth more fully above, plaintiffs' motion is light on facts and evidence connecting this allegedly fraudulent behavior with an intent to evade creditors or a money judgment. Put differently, although "it is questionable" whether all of defendants' transactions were "made for legitimate reasons, . . . the Court concludes that there are insufficient badges of fraud . . . at this time[,] such that pre-judgment attachment is not warranted." *Compass-*

23

*Charlotte 1031, LLC v. Prime Cap. Ventures, LLC*, No. 24-cv-00055, 2024 WL 1171772, at *26 (N.D.N.Y. Mar. 19, 2024). And again, plaintiffs have not offered evidence that defendants are "about to assign; dispose of, encumber, or secret[e] property." *Wilson*, 2019 WL 4601969, at *7.

Accordingly, plaintiffs' motion for attachment of defendants' assets is denied without prejudice. *See Kreit v. Byblos Bank S.A.L.*, No. 22-cv-10751, 2023 WL 3005852, at *2 (S.D.N.Y. Mar. 28, 2023) (acknowledging that "[i]f in the future [the] [p]laintiff thinks he has developed a good faith basis to file another motion for attachment he can do so").

### IV.    Motion for Judgment on the Pleadings

In addition to opposing plaintiffs' motion for provisional relief, defendants Bernard and Halina move to dismiss plaintiffs' complaint for failure to state a claim. *See* Defs.' Mot. Defendants' central argument is that plaintiffs fail to state a claim because the complaint is "devoid of facts" indicating that either Bernard or Halina are "employer[s]" within the meaning of the FLSA or the NYLL. Defs.' Mot. 2–3. Defendants also contend that even if they were employers subject to the provisions of the FLSA and the NYLL, they "deny that [p]laintiffs were ever employees within the meaning" of those statutes because plaintiffs were, "[t]o the best of [d]efendants['] knowledge and belief[,] . . . hired and paid as independent contractors on a job by job basis." Defs.' Mot. 3. Defendants further argue that the complaint fails to satisfy the Rule 8 pleading standard in the FLSA context because plaintiffs' factual allegations lack the requisite detail indicating which specific workweeks plaintiffs were allegedly underpaid. *See* Defs.' Mot. 5. Defendants attach two affidavits to their motion—one from Bernard and one from Halina—purporting to support their argument that they had a good faith belief that plaintiffs were not covered employees

24

under the FLSA or the NYLL. *See* Aff. of Bernard Sobus, ECF No. 78-2; Aff. of Halina Sobus, ECF No. 78-3.

Because of these affidavits, plaintiffs urge the Court to treat defendants' motion as made under Rule 56 of the Federal Rules of Civil Procedure. *See* Pls.' Opp'n. Plaintiffs' opposition to defendants' motion is thus fashioned as an opposition to a motion for summary judgment; accordingly, plaintiffs advance arguments directed at summary judgment issues rather than the sufficiency of the amended complaint's allegations. For instance, plaintiffs argue that defendants' "summary judgment" motion is premature because discovery is not yet complete. *See* Pls.' Opp'n 3–5. In the same vein, plaintiffs argue that defendants' motion should be denied because there are genuine disputes of material fact. *See* Pls.' Opp'n 5–7.

As a threshold matter, the Court declines plaintiffs' invitation to treat defendants' motion as one for summary judgment. Instead, the Court disregards defendants' affidavits and treats their motion as a motion for judgment on the pleadings pursuant to Rule 12(c). *See Stewart v. Target Corp.*, No. 11-cv-03557, 2013 WL 1182080, at *4 n.4 (E.D.N.Y. Mar. 20, 2013) ("The Court declines to consider the affidavits at this juncture, as a motion for judgment on the pleadings focuses on the pleadings themselves, and not on matters outside of the pleadings such as affidavits."); *Cho v. Osaka Zen Spa*, No. 19-cv-07935, 2021 WL 1736813, at *3 (S.D.N.Y. May 3, 2021) (declining to convert Rule 12(c) motion to a motion for summary judgment and instead, "deciding the [m]oving [d]efendants' motion for judgment on the pleadings [without] consider[ing] the declarations submitted by the parties"); *accord Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) ("Rule 12(b) gives district courts two options when matters outside the pleadings are presented in response to a 12(b)(6)

motion: the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.").

Accepting all factual allegations in the amended complaint as true, and affording plaintiffs every reasonable inference, plaintiffs clearly state plausible causes of action pursuant to the FLSA and the NYLL. First, contrary to defendants' contention, plaintiffs plausibly allege that Bernard and Halina were employers for purposes of the FLSA and the NYLL. Plaintiffs allege that the individual defendants "participated in the day-to-day operations" of the corporate entities, including that Bernard and Halina were "high-level corporate officers" of Zen Restoration. AC ¶ 21. Plaintiffs also allege that Bernard and Halina set plaintiffs' work schedules, maintained their employment records, controlled their rate and method of wages, had the power to hire and fire them, and "directly supervised" their work. AC ¶ 32. These allegations support a reasonable inference that Bernard and Halina were "employers" under the FLSA and NYLL. *See Coffin v. MRI Enters.*, No. 11-cv-02453, 2014 WL 5363855, at *3 (E.D.N.Y. Oct. 21, 2014) (finding allegations that the individual defendants had power to "hire and fire employees, establish and pay wages, set work schedules, and maintain employment records" stated a "plausible claim that the . . . defendants [were] employers for purposes of the FLSA and NYLL"); *see also Baizan Guerrero v. 79th St. Gourmet & Deli Inc.*, No. 18-cv-04761, 2019 WL 4889591, at *4 (E.D.N.Y. Sept. 10, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 4887914 (Oct. 3, 2019).

Defendants' second argument about their "knowledge and belief" that plaintiffs were independent contractors and thus were not covered employees under the FLSA or NYLL is premature. *See* Defs.' Mot. 3. "Under the FLSA, good faith can be a valid defense

for an employer to avoid liability" in certain circumstances. *Kelly v. 21 Grp. Inc.*, No. 22-cv-00226, 2023 WL 5831131, at *9 (E.D.N.Y. Sept. 8, 2023). Similarly, good faith is a defense to liquidated damages under the NYLL. *See Sai Qui Chen v. E. Market Rest., Inc.*, No. 13-cv-03902, 2018 WL 340016, at *8 (S.D.N.Y. Jan. 9, 2018). However, good faith is an affirmative defense inappropriate for resolution based on the pleadings. *See Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 452 (S.D.N.Y. 2021) ("Although courts occasionally resolve questions of bad faith at the pleading stage, the question of whether a party acted in good faith typically is not suitable for resolution on a motion to dismiss."); *see also Kelly*, 2023 WL 5831131, at *9 (explaining that good faith defense to FLSA liability presented questions of fact); *Reich v. Se. New England Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("To establish good faith, a defendant must produce plain and substantial *evidence* of at least an honest intention to ascertain what the [FLSA] requires and to comply with it.") (emphasis added). And in any event, although a good faith defense could bar FLSA liability, such a defense would not completely defeat plaintiffs' NYLL claims. *See Beh v. Comm. Care Companions Inc.*, No. 19-cv-01417, 2024 WL 264448, at *7 n.7 (W.D.N.Y. Jan. 24, 2024) (explaining that "a defense of good faith conduct goes only to the question of liability under the FLSA, . . . [w]hereas, no comparable liability defense is found in the New York Labor Law, other than . . . as it pertains to [liquidated] damages").

Defendants' suggestion that the complaint is deficient because plaintiffs fail to allege "details of daily or weekly hours worked in a given week," is misplaced. Defs.' Mot. 5. Although plaintiffs must "provide some degree of specificity in order to sufficiently plead an FLSA overtime claim," an employee is not required to "provide a week-by-week recounting," nor must they "set forth the approximate number of unpaid regular and

overtime hours allegedly worked." *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 114–15 (2d Cir. 2023); *see also Collison v. WANDRD, LLC*, 737 F. Supp. 3d 231, 239 n.3 (S.D.N.Y. 2024) (explaining that the "standard that a plaintiff must allege a specific workweek during which he worked overtime and how many hours he worked in that week . . . was specifically rejected by the Second Circuit in *Herrera*"). Instead, "[t]o plead a plausible FLSA overtime claim, [p]laintiffs must provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). Put differently, plaintiffs must provide factual details which permit the Court to infer that they worked "40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Herrera*, 84 F.4th at 115.

Plaintiffs supply sufficient factual details here. For example, they allege that "each [p]laintiff with the exception of Pelc, [Leszek] Tarnawski . . . , and Sawicki worked more than forty (40) hours per week during their regular workweek . . . but did not receive premium overtime rate for work in excess of forty hours."[9] AC ¶ 62. In addition, the complaint catalogues the approximate number of overtime hours each plaintiff—aside from Pelc, Leszek Tarnawski, and Sawicki—worked each year they were employed by defendants. *See, e.g.*, AC ¶ 64 ("Plaintiff Tarnacki calculates his overtime hours on [d]efendants' project site as follows: . . . In the entire year 2014, he worked 35 overtime

---

[9]    In light of this allegation, the Court construes the amended complaint not to bring claims for unpaid overtime as to Pelc, Leszek Tarnawski, and Sawicki. *See* Mot. for Default J. 2–3, ECF No. 86 (seeking damages for unpaid overtime as to each plaintiff except Pelc, Leszek Tarnawski, and Sawicki).

hours during his regular schedule Monday through Friday, and worked 17 Saturdays and one Sunday at 8 hours a day.").

Together, these allegations contain sufficient factual matter "from which to infer that [p]laintiff[s] worked more than 40 hours during a specific week, and [were] not compensated for that additional time" as required by the FLSA. *Escamilla v. Young Shing Trading Co., Inc.*, No. 17-cv-00652, 2018 WL 1521858, at *3 (Jan. 8, 2018), *report and recommendation adopted*, 2018 WL 1033249 (Feb. 23, 2018); *see also Herrera*, 84 F.4th at 112 ("Where the [p]laintiffs plausibly allege that they worked more than forty hours per week as part of their regularly scheduled workweek, they have adequately stated a claim under the FLSA and need not list the specific workweeks during which they worked more than forty hours."); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 n.7 (2d Cir. 2013) ("[A]n approximation of overtime hours worked may help draw a plaintiff's claim closer to plausibility."); *cf. Casci v. Nat'l Fin. Network, LLC*, No. 13-cv-01669, 2015 WL 94229, at *3 (E.D.N.Y. Jan. 7, 2015) ("[P]laintiff's allegations do not demonstrate his efforts to comply with the Second Circuit's direction that plaintiffs draw on memory and experience in providing complaints with sufficiently developed factual allegations.") (quoting *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).

Accordingly, because plaintiffs plausibly allege claims for unpaid overtime pursuant to the FLSA and the NYLL, defendants' motion for judgment on the pleadings is denied.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for a preliminary injunction, appointment of a receiver, and for attachment of defendants' assets is denied without prejudice. Defendants' motion for judgment on the pleadings is denied. The case is respectfully referred to Magistrate Judge Lara K. Eshkenazi for pretrial supervision and any further proceedings deemed necessary.


**SO ORDERED.**


　　　　　　　　　　　　　　　　　　　　*/s/ Natasha C. Merle*
　　　　　　　　　　　　　　　　　　　NATASHA C. MERLE
　　　　　　　　　　　　　　　　　　　United States District Judge


Dated:　　　November 7, 2025
　　　　　　　Brooklyn, New York